# FOLSOM *v.* BATCHELDER.

If the owner of goods employ one to carry and deliver them to a purchaser, the declaration of the carrier made at the time of the delivery, that he brought and delivered the goods on account of another person, is not binding on the owner.

If the defendant refer the plaintiff or his agent to a third person for information on the subject of the suit, the statement of such third person, made to the plaintiff or his agent on the same subject, is competent evidence against the defendant.

ASSUMPSIT, to recover the price of a load of potatoes. The writ was dated January 5, 1848. Plea, the general issue.

It appeared that the plaintiff owned a farm in Epping, in this county, and that one West was his agent for selling the crops that grew on it. The defendant resided in North Hampton and was engaged in buying and selling potatoes in that town. One Brown, was also engaged in buying potatoes in different towns in the county, and carrying them into North Hampton, where he disposed of them to the defendant and others.

The evidence tended to show that West, as the agent of the plaintiff, bargained the potatoes in controversy to Brown. The price was agreed upon, cash was to be paid on delivery, and Exeter was the place to which West was to draw them. Prior to this, Brown had purchased two loads of potatoes of West, as such agent of the plaintiff, (all the potatoes being the plaintiff's), and had paid him therefor. West drew the potatoes in dispute to Exeter, but Brown was not there to receive them. He then drew them several miles to the defendant's store in North Hampton. When he reached there, the defendant was gone and the

store locked. He went to defendant's house and told his wife and daughter that he had got a load of potatoes for Mr. Brown. After some conversation between them, the daughter went to the store and unlocked it, the potatoes were measured out and left in the store, the daughter taking an account of the quantity as they were measured. When the defendant returned, his daughter informed him of what had taken place, and he made no reply. He afterwards sold the potatoes together with others which he had.

There was evidence tending to show that Brown, in making the bargain with West for the potatoes, was the employed agent of Batchelder, and there was also evidence tending to show that he was not; but that defendant had accounted to Brown for the potatoes and paid him therefor. The plaintiff introduced the deposition of Benjamin M. Folsom, a brother of the plaintiff, who testified that he went with the bill of the potatoes to the defendant's store. The witness then goes on to say, "I handed him the bill; he looked at it and said he thought the bill was paid; he said a Mr. Brown bought the potatoes for him, he furnished him with the money, and thought that Brown had paid for them. Batchelder refused to pay for them, as he had paid Brown for them once, and said he had paid him for all the potatoes he had had. Batchelder referred me to Brown, saying that Brown would tell me the same story. I went to see Mr. Brown at the North Hampton Depot, and told him what Mr. Batchelder said.

["Brown said that he had paid for all the potatoes he had had of West, who drove the team of my brother, and took them at Exeter — he said that he had understood that West had hauled another load of potatoes and hauled them to Batchelder at North Hampton — that he, Brown, had not received the money to pay for them, and could show it by his bill. He went to his house and got his papers and went up to Batchelder's store and showed Batchelder his papers, and had a considerable talk about it. Brown told Batchelder that he did not know any thing about the said potatoes, and had never received any money to pay for them."]

Folsom *v.* Batchelder.

All that part which is included in brackets was excepted to by the defendant, but admitted by the Court. The witness goes on to relate other things which took place at the store between Batchelder and Brown and himself, and then says, —

["They, Batchelder and Brown, then agreed that the money for said potatoes should be sent up to Lovering's store, in Exeter, in a few days.]

This sentence in the deposition was also excepted to by the defendant, but admitted by the court. The witness further testified to other matters in the deposition which were not excepted to.

The defendant's counsel requested the court to instruct the jury that "if West told Batchelder's daughter that he had got a load of potatoes for Brown, and so left them, and she so told her father, and he, supposing them Brown's, accounted to Brown for them, the verdict must be for the defendant.

The court did not charge the jury in those terms, but instructed them, that if they found that Brown was not the agent of Batchelder, and that West sold the potatoes to Brown and left them at the defendant's store for Brown, and that the defendant subsequently took them and accounted to Brown for them, their verdict should be for the defendant. But if they found that Brown was the agent of Batchelder, and purchased the potatoes for Batchelder, and at his request; or if the potatoes had not been sold to Brown and were left at defendant's store, and defendant appropriated them to his own use, and afterwards with a knowledge of what had taken place, promised to pay for them, he would be liable. To these instructions to the jury, the defendant's counsel excepted. The jury returned a verdict for the plaintiff, and the defendant moves to set the same aside and for a new trial, —

1. "Because the Court admitted the testimony of B. M. Folsom, excepted to as above."

2. "Because the court declined to charge the jury as requested by the defendant."

3. "Because the court instructed the jury in the manner in which they did."

VOL. XXII.          5

4. " Because the verdict is against the law and the evidence."

*McMurphy*, for the plaintiff.

*Marston*, for the defendant.

PERLEY, J. Were the statements made by Brown to Benjamin M. Folsom, competent evidence against the defendant ?

Benjamin F. Folsom went in behalf of the plaintiff, with his bill of the potatoes, to demand and receive payment. In this he acted as the plaintiff's agent, and any statement made to him on the subject of his agency, would affect the defendant, precisely as if the same statement had been been made to the plaintiff himself ; and in going to Brown and making the inquiries suggested by the defendant, he also acted as the plaintiff's agent ; and the answer of Brown to his inquiries, will have the same effect, as if they had been made to the plaintiff.

The defendant declined to pay on the ground, that he had furnished money to Brown, and Brown had already paid ; and referred the plaintiff's agent to Brown, saying that Brown could tell him the same story. The agent of the plaintiff then went to Brown and inquired accordingly ; and, in answer to his inquiries, Brown made certain statements relating directly to the subject, respecting which the reference to Brown had been made by the defendant.

This reference to Brown made him the agent of the defendant to explain the matter referred to him. His statements on that subject are to be considered as the statements of the defendant. They are not conclusive, but are to be received as competent evidence, like the declarations and admissions of the party himself. *Williams* v. *Jones*, 1 Campbell, 364 ; *Garnet* v. *Ball*, 3 Starkie's Rep. 160 ; *Hood* v. *Reeve*, 3 Carr. & Payne, 532 ; *Duval Covenhoven*, 4 Wendell, 561.

As to the instructions moved for by the defendant, they assume the ground that if West, who carried and delivered the potatoes, said, at the time of the delivery, he brought them for Brown, and the defendant, supposing this to be the fact, receiv-

ed them as coming from Brown, this statement of West would be conclusive on the plaintiff, although the potatoes were his, and West was employed to carry and deliver them for the plaintiff, without any authority to sell or otherwise dispose of them.

The evidence was conflicting, tending on the part of the plaintiff to show that Brown, acting as the agent of the defendant, had made a bargain with the plaintiff for the potatoes; that the potatoes under this bargain were sold by the plaintiff to the defendant, and that West was employed by the plaintiff to carry and deliver them to the defendant. In the plaintiff's view of the case, and according to his evidence, West had no authority to sell or deliver to any person but the defendant, or on account of any person but the plaintiff.

The defendant, in this part of the case, takes the ground that though the facts were as the plaintiff contended, though the potatoes belonged to the plaintiff, and West was employed to carry and deliver them for him to the defendant, yet if West, when he delivered the potatoes, told the defendant he brought them for Brown, the plaintiff will be concluded by this false and unauthorized statement of Brown.

As a general rule, the possession of goods by a bailee or servant, gives him no power to make any disposition of them, except by virtue of actual authority received from the owner. In England an unauthorized sale in market overt binds the owner. So the property in things which are said to have no ear-mark, such as cash, and bank-notes, passes by delivery in the usual course of business. And so, where the possession of the bailee, from the nature of his employment, implies an authority to sell; as when goods are left with an auctioneer or factor, a sale by such bailee, though he had no actual authority, will bind the owner. In such cases the owner has allowed the bailee in possession, to hold out the appearance of an authority to sell, which would deceive and defraud the fair purchaser, if the law allowed the validity of the sale to be questioned. Com. Dig. Biens, D. 3, and Market, E. *Pickering* v. *Busk*, 15 East, 41 and 42; *Hartop* v. *Hoare*, 1 Wilson, 8; s. c. 2 Strange, 1187; s. c. 3 Atkyns, 44; Bacon's Use of the Law, vol. 13 of his works, 243.

Folsom *v.* Batchelder.

This case does not fall within any of these exceptions to the general rule. West, being employed by the plaintiff to carry and deliver the potatoes to the defendant, had no authority, express or implied, in law, to sell and deliver them as the property of another. His sale and delivery, as the property of Brown could not divest the title of the plaintiff. Nor could his declaration have any higher effect. The question was, whether Brown bought the potatoes on his own account or as agent for Batchelder. If they were in fact bought by Brown as agent, with due authority from the defendant, and the plaintiff sent and delivered them to Batchelder, according to the bargain made with his agent, the defendant would be bound to pay the plaintiff, and the plaintiff could not be concluded by the unauthorized statement of West.

The evidence that Batchelder and Brown, after they had conferred together, agreed that the money for the potatoes should be sent up to Lovering's, in Exeter, was competent to be submitted to the jury as an admission of Batchelder, that he was liable to pay for the potatoes. If it is to be looked on in the light of an agreement, it tends to show a joint undertaking to pay; and on such an agreement, Batchelder would be liable alone in this suit, as there is no plea for nonjoinder of Brown.

*Judgment on the verdict.*