**SACHS v. EWING et al.**
No. 8237.

United States Court of Appeals for the District of Columbia.

Argued Jan. 5, 1943.

Decided Jan. 28, 1943.

Mr. Harry Friedman, of Washington, D. C., for appellant.

Mr. Roy St. Lewis, of Washington, D. C., with whom Mr. Charles P. Swindler, of Washington D. C., was on the brief, for appellees.

Before GRONER, C. J., and VINSON and EDGERTON, JJ.

EDGERTON, Associate Justice.

Appellant Jacob Sachs sues to recover loans of $600 and $400 which he claims to have made to appellees Jay-Hall Co., Inc., and Jean Hall Ewing on October 16 and November 3, 1941. Appellant was an employee of the corporation. His brother Samuel Sachs, its secretary-treasurer and general manager, was in sole charge of its business from its organization until after the alleged loans. Appellee Ewing always owned substantially all the stock of the corporation. She became its president on September 20, 1941.

Appellant testified that his brother Samuel, to meet alleged needs of the corporation, borrowed from him $200 on July 2, 1941, $300 on July 8, $300 on July 17, $150 on July 18, $200 on August 18, $300 on September 30, and $325 on October 10, in addition to the sums in suit. He testified that all loans previous to those in suit were promptly paid. All the checks were put in evidence.

The manager, Samuel Sachs, testified that he told appellee Ewing about the earlier loans and that she did not object; also that no one ever told him not to borrow from appellant. He identified all of appellant's checks as loans to the corporation, and stated that all had been repaid except the two in suit. He also identified entries of the loans in the books. He stated that the corporation still owed Jacob $1,000. He testified that at the request of appellee Ewing he kept the corporate funds in his personal bank account, but that he kept a separate record of them.

Appellees' witness Strom, an accountant employed by appellee Ewing to audit and

supervise the corporation's books, testified that all the alleged loans were entered in the books, that there was no record of payment of the loans in suit, and that the books showed that all previous loans had been paid. He testified that on September 25, 1941, he submitted to appellee Ewing a report which showed that appellant had then loaned the corporation $1,150 which had been repaid, and on October 20 a report which showed that the corporation owed appellant $600.

None of the foregoing testimony was contradicted, except that appellee Ewing testified that she did not find out until about November 14 that Samuel had borrowed money for the business from appellant. She conceded that "all details of the business prior to November 14, 1941 were left to Samuel." She "felt" that neither she nor the corporation owed Jacob anything.

One Handley testified that he was president of the corporation from its organization on March 6, 1941 until September 20, 1941, and did not know that Samuel Sachs, who was "in complete charge of the business" until November 14, had borrowed money from appellant.

Appellees put in evidence the minutes of a directors' meeting of September 20, 1941, which contained a resolution "That any two officers of this corporation be and they hereby are jointly authorized to borrow at any time on behalf of the corporation from the Second National Bank in Washington, D. C. * * *" Samuel Sachs testified that he was not at this meeting, but he identified his waiver of notice. He testified that he received a certificate of the resolution, returned it to appellees' attorneys, and received a "corrected resolution" which authorized him to borrow money alone. No corrected resolution was produced.

The corporation counterclaimed for the money which appellant admittedly received

from it in repayment of the alleged loans prior to the ones in suit. The court found against appellees on the counterclaim, but against appellant on the loans in suit. The judge stated that he "didn't believe it was incumbent on the defendants to bring the Corporation's resolution of September 20, 1941 to the attention of Jacob." The plaintiff appealed, but the defendants did not.

██ Since it was admitted that appellant received corporate funds in repayment of the alleged earlier loans, the corporation would of course have been entitled to judgment on its counterclaim if those loans had not been made. The finding for appellant on the counterclaim therefore amounts to a finding that they were made. Whether or not Samuel Sachs reported them to appellee Ewing, it is not disputed that these earlier loans and repayments were entered in the company's books, or that they were reported by the company's auditor on September 25 and October 20. At least as early as September 25, therefore, and probably earlier, the company was put on notice of these transactions. Yet it left Samuel in complete charge of the business until November 14. It follows that on October 16 and November 3, the dates of the alleged loans in suit, Samuel had apparent authority to borrow from appellant.[1] The resolution of September 20 did not end this apparent authority, since it is not shown to have been communicated to appellant.[2]

██ There was no evidence which would have supported a judgment against appellee Ewing on the loans in suit. But if these loans were actually made, as the books showed and as both Samuel and the appellant testified, appellant is entitled to judgment against the corporation. Since that evidence was undisputed, and practically identical with the evidence concerning the loans which the court in effect found to have been made, and since the court apparently decided the case on the theory

---

[1] American Nat. Bank v. Bartlett, 10 Cir., 40 F.2d 21, 25; Valiquette v. Clark Bros. Coal Mining Co., 83 Vt. 538, 77 A. 869, 34 L.R.A.,N.S., 440, 138 Am.St.Rep. 1104.

We need not decide whether Samuel, as general manager, had actual authority to borrow when the earlier loans were made. Cf. Washington Times Co. v. Wilder, 12 App.D.C. 62; La Normandie Hotel Co. v. Security & Trust Co., 38 App.D.C. 187; Glidden Varnish Co. v. Interstate Nat. Bank, 8 Cir., 69 F. 912; McDer-

mott v. Jackson, 97 Wis. 64, 72 N.W. 375; Food Products v. Pierce, 154 Va. 74, 152 S.E. 562. The court might find, and we must assume that it did find, that any actual authority which Samuel may have had was revoked by the resolution of September 20.

[2] Rathbun v. Snow, 123 N.Y. 343, 25 N.E. 379, 10 L.R.A. 355; Ryan v. Charles E. Reed & Co., 266 Mass. 293, 165 N.E. 396, 398, 399; cf. Fidelity Storage Co. v. Kingsbury, 65 App.D.C. 69, 70, 79 F. 2d 705.

that appellant was bound by the resolution of September 20, we might perhaps take it as established that the loans in suit were made, and direct final judgment for appellant. But to avoid risk, however slight, of invading the fact-finding function of the trial court, we merely remand the case for further proceedings consistent with this opinion.

Reversed.